RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE __8/31/05__
      6b

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

TAMMY GUIDRY                           CIVIL ACTION NO. 04-1756

VS.

COMMISSIONER OF THE SOCIAL            MAGISTRATE JUDGE METHVIN
SECURITY ADMINISTRATION               BY CONSENT OF THE PARTIES

### MEMORANDUM RULING

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable law, the court

concludes that there is substantial evidence to support the ALJ's finding that Guidry is not

disabled. Accordingly, the Commissioner's decision is **AFFIRMED.**

### *Background*

Born on November 30, 1963, Tammy Guidry ("Guidry") is currently 41 years old. She

completed the twelfth grade and worked in the past as a sewing machine operator. On

October 11, 2001, Guidry filed an application for disability insurance benefits and supplemental

security income, alleging disability since May 22, 1999 due to varicose veins and neck, low back,

and stomach pain.[1] Following an administrative hearing, the ALJ rendered an unfavorable

decision on June 20, 2003.[2] The Appeals Council denied review, making the ALJ's decision the

final decision of the Commissioner from which Guidry now appeals.

---

[1] Tr. 41-43. Guidry filed a previous application alleging disability due to the same problems, which was
denied. That application covered the period of July 23, 1996 to May 22, 1999. Guidry does not dispute the ALJ's
decision to limit the instant application to the time period beginning May 22, 1999.

[2] Tr. 12-18.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

## *ALJ's Findings*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1.      If a person is engaged in substantial gainful activity, he will not be
        found disabled regardless of the medical findings.

2.      A person who does not have a "severe impairment" will not be
        found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ found that Guidry has the following severe impairments: degenerative changes of the lumbar and cervical spines and varicose veins in both legs.[3] The ALJ determined that Guidry retains the residual functional capacity to lift and carry ten pounds frequently and twenty pounds occasionally, and stand and walk six hours and sit six hours in a workday. The ALJ concluded that the job of sewing machine operator, as it is performed in the national economy, is light work, and therefore, Guidry could perform her past work.

### *Assignment of Errors*

Guidry alleges the following errors: 1) the ALJ erred in not finding Guidry's knee and shoulder pain and gastroesophageal reflux disease to be severe impairments; and 2) the ALJ erred in assessing her residual functional capacity, resulting in an erroneous determination that she could return to her past work.[4]

---

[3] Tr. 14.

[4] Guidry also makes the conclusory allegation that the ALJ erred in not finding that she met a Listed impairment. Guidry does not reference a specific listing, nor does she offer any support for this allegation, nor is there any support for same in the record. Thus, the allegation is without merit.

4

***Findings and Conclusions***

After a review of the entire record and the briefs of the parties, and pursuant to 42 U.S.C.

§ 405(g), the court concludes that the ALJ's findings and conclusions are supported by

substantial evidence in the record.

## Administrative Record

In 1989 and 1996, Guidry underwent bilateral vein stripping to correct her varicose

veins.[5]  In 1999, Guidry was examined for varicose vein problems at University Medical Center

("UMC") in Lafayette, Louisiana.[6]  In 2001, Dr. James Ingram, a vascular surgeon, noted that

Guidry's veins were enlarged, but he advised Guidry that even with surgery they would recur.[7]

On August 6, 2002, Guidry was seen at UMC complaining of varicose vein pain.  She was

advised to wear compression stockings and to return for additional testing.[8]  Guidry did not

return for further treatment, however, until 2004, after the ALJ's decision.  In January, 2004,

Guidry was examined by Dr. Christopher LaGraize, a vascular surgeon.[9]  Dr. LaGraize

performed a venous duplex examination, which showed evidence of vein reflux, but no venous

thrombosis.[10]  Dr. LaGraize performed phlebectomy of the varicose veins.[11]

---

[5] Tr. 158, 180.

[6] Tr. 146.

[7] Tr. 83.

[8] Tr. 124.

[9] Tr. 203.

[10] Tr. 211.

[11] Tr. 208, 212.

On August 28, 2001, Guidry was examined at UMC complaining of "ulcer" pain.[12]

Guidry was advised to quit smoking and to return in one month. Guidry was again examined on

September 25 and October 8, 2001 with the same complaints.[13]

At the request of Disability Determination Services, Guidry was examined by

Dr. Louis Nix, an internist on March 14, 2002.[14] X-rays were taken of Guidry's lumbar and

cervical spine.[15] Dr. Nix concluded:

> Sustained a motor vehicle accident a couple of years ago with complaints of
> constant neck and low back pain...Decrease spine flexion at 45 degrees, full lateral
> flexion bilaterally and full extension. Abnormal x-ray with lower lumbar spine,
> dextrocoliosis, mild L3-L4 degenerative disc changes and moderate L4-L5
> degenerative disc changes. She also had some mild to moderate C4-C6
> degenerative changes in her cervical spine. She was able to walk on her heels and
> toes without difficulty. She did have decrease sensation to bilateral legs. Highly
> probable secondary to varicose veins. She does have severe varicose veins to both
> legs. She's had two prior surgeries for this condition without relief or success.
> The veins are still prominent, painful, edematous. She does have decrease pedal
> pulses bilaterally at 1+ and altered sensation in her lower extremities to touch.
> Tandem walk normal and Romberg was negative. Full range of motion to
> shoulders, hips, knees, elbows and wrist. She had decrease range of motion to
> cervical spine, decreased flexion at 30 degrees, decreased extension at 35
> degrees.[16]

UMC notes from July 3, 2002 show that Guidry was complaining of right knee and

shoulder pain.[17] An x-ray taken of the right knee on that date showed no evidence of

---

[12] Tr. 137.

[13] Tr 133-134.

[14] Tr. 86-89.

[15] Tr. 91.

[16] Tr. 89.

[17] Tr. 127-128.

abnormality.[18] On August 19, 2002, another x-ray of the knee was taken, indicating "very slight narrowing of the medial part of the joint."[19] An August 19 x-ray of the right shoulder was normal.[20] Repeat x-rays of the knee and shoulder taken on November 25, 2002 were normal.[21]

At the administrative hearing, Guidry testified that the reason she cannot work is because of varicose veins and pain in her back and neck.[22] Guidry testified that while doing housework, she has to take breaks to lay down and elevate her legs. She stated that she can walk for only an hour before needing to lay down.[23] She can lift eight to ten pounds.[24] Guidry testified that she does her own grocery shopping, house cleaning, and spends an hour or two every day reading.[25]

## Severity finding

The entirety of Guidry's argument that the ALJ erred in not finding some of her impairments severe is as follows: "The Administrative Law Judge erred when [he] determined that claimant did not have medically determinable impairments or combination of impairments that were severe."[26] Guidry does not identify which impairments are severe, nor did she point to evidence supporting her contention.

---

[18] Tr. 130.

[19] Tr. 122.

[20] Tr. 121.

[21] Tr. 114-116.

[22] Tr. 220.

[23] Tr. 226.

[24] Tr. 235.

[25] Tr. 228.

[26] Rec. Doc. 8 at p. 2.

A claimant has the burden to establish that she is disabled under the Act. 20 C.F.R. §
404.1512. To meet this burden, the claimant must furnish medical and other evidence of the
existence of the disability. 42 U.S.C. § 423(d)(5)(A). It is the claimant's burden to demonstrate
that she suffers from a severe impairment or combination of impairments. 20 C.F.R.
§404.1520(c). The Fifth Circuit uses the following standard in determining whether a claimant's
impairment is severe: "[A]n impairment can be considered as not severe only if it is a slight
abnormality [having] such minimal effect on the individual that it would not be expected to
interfere with the individual's ability to work, irrespective of age, education or work experience."
Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985), citing Estran v. Heckler, 745 F.2d 340,
341 (5th Cir.1984). See also Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984); Martin v.
Heckler, 748 F.2d 1027, 1032 (5th Cir.1984); Davis v. Heckler, 748 F.2d 293, 296 (5th Cir.1984).
If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot
serve as a basis for a finding of disability. 20 C.F.R. §§ 404.1530, 416.930; Lovelace v. Bowen,
813 F.2d 55, 59 (5th Cir.1987).

After noting the standard set forth in Stone, the ALJ analyzed the foregoing medical
evidence and concluded that Guidry's neck, back and varicose vein impairments were severe.
The ALJ found, however, that there was no medical support for finding that Guidry's knee,
shoulder, and gostroesophageal reflux disease were severe. The evidence supports the ALJ's
determination. The x-rays of Guidry's knee and shoulder were normal. Although she was
treated briefly for reflux, there is no indication of ongoing treatment. Moreover, at the hearing,
Guidry did not reference her knee, shoulder, or reflux when asked what impairments she had that
prevented her from working. Neither Guidry's testimony or brief indicate that she had any

limitations posed by her knee, shoulder, or reflux. Thus, the ALJ did not err in finding that these impairments were not severe.

Moreover, the ALJ did not stop the disability analysis at Step 2 by finding that Guidry did not have a severe impairment. Because the Fifth Circuit has already declined to extend the Stone decision to cases that were not decided at Step 2 on the basis of non-severity, Guidry's contention has no merit. See, e.g., Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987) (where ALJ concluded that appellant's hypertension was of "mild medical severity," and proceeded through the sequential evaluation to conclude at the fourth and fifth steps that the appellant could perform past relevant work and a full range of light work, the court held that the ALJ did not apply an incorrect severity standard at Step 2).

## Residual functional capacity and non-disability finding

Guidry argues that the ALJ incorrectly assessed her credibility and the ALJ's residual functional capacity assessment was erroneous. Guidry maintains, therefore, that the ALJ erred in finding that she could perform her past work.

The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). The ultimate issue of disability is reserved to the Commissioner. The ALJ has discretion to determine the disabling nature of subjective complaints of pain, "at least where the medical evidence is inconclusive." Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987). The ALJ's determination in this regard is entitled to considerable deference. Id. However, if uncontroverted medical evidence reveals a basis for the subjective

complaints of pain, the "ALJ's unfavorable credibility evaluation of a claimant's complains of pain will not be upheld on judicial review . . . at least where the ALJ does not on an articulated basis weigh the objective medical evidence in assigning reasons for discrediting the claimant's subjective complaints of pain." Cook v. Heckler, 750 F.2d at 395.

The ALJ noted Guidry's daily activities:

> The claimant's own testimony regarding her activities are consistent with the performance of some work activity. Ms. Guidry testified that she does housework, gets her children ready for school, helps her children with their homework, uses the computer, shops for groceries, does laundry, socializes with her mother and reads one to two hours per day. She further testified that she drives on a daily basis and was able to complete a six-month computer course last year. Though these activities do not necessarily prove that Ms. Guidry is able to perform heavy or even medium work, they are consistent with the ability to perform light work.[27]

At the time of the ALJ's decision, Guidry had not been treated for her varicose veins in a year and prior to that her treatment had been sporadic. The ALJ stated, "The undersigned is not inclined to find the claimant's varicose veins to limit her ability to perform light work when Ms. Guidry has had no recent need for treatment."[28] The ALJ concluded:

> The credibility of subjective allegations of disability are undermined in this case by testimonial inconsistencies, lack of ongoing treatment for allegedly disabling problems and relatively benign findings on examination and by x-rays. Considering the evidence, the testimony and the above referenced criteria, the claimant has impairments that are reasonably expected to produce some pain, but the complaints suggest a greater severity of impairment than can be shown by the objective medical evidence alone. Thus, the undersigned finds her subjective

---

[27] Tr. 16.

[28] Tr. 16.

allegations are credible only to the extent they are consistent with the objective medical evidence and the conclusions stated herein.[29]

The court's function is to determine whether substantial evidence supports the ALJ's decision. As set forth above, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). Here, the medical evidence supports the ALJ's finding that Guidry retained the residual functional capacity to perform light work. Guidry maintains that her subsequent treatment with Dr. LaGraize[30] over a year after the ALJ's decision shows that Guidry is indeed disabled. Even assuming that the subsequent medical records are relevant to the time period at issue, the records do not support Guidry's contention of disability. Although Guidry maintains that Dr. LaGraize stated she was "disabled because of a neck and back injury from work," this information is in the "history" section of Dr. LaGraize's report, i.e., the information was provided by Guidry to the physician.[31] At no time did Dr. LaGraize, or any other doctor, indicate that Guidry was disabled or that she had limitations on her ability to work. This conclusion is supported by the fact that Dr. LaGraize at no time examined Guidry's neck and back for functioning, but instead he was treating her for varicose veins, and therefore the indication that she was disabled due to her neck and back are clearly simply documenting the history provided by Guidry. Thus, although it is clear that Guidry had continuing problems with varicose veins, there is no indication that the impairment limited her ability to perform light

---

[29] Tr. 16.

[30] Plaintiff's brief incorrectly identifies the doctor as Dr. Nix, however, the notes clearly indicate that it was Dr. LaGraize.

[31] Tr. 203.

work, and therefore, the medical records from 2004 does not affect the correctness of the ALJ's decision.

Further, the ALJ's decision to discount Guidry's allegations regarding her limitations is supported by the record. The ALJ found that there was no objective evidence supporting Guidry's allegations that she needs to lay down throughout the day or that her need for breaks due to her varicose vein problems cannot be accommodated within a light work scenario. Although the ALJ discounted Guidry's allegations of disabling limitations, it is clear that he did give her the benefit of the doubt in areas that has medical support, i.e., he accepted that she cannot frequently lift more than ten pounds and that her impairments preclude her from performing all work except work within the confines of light duty. If the ALJ had found Guidry completely incredible, he would not have found her limited in any way. Instead, however, the ALJ closely assessed the medical evidence and determined that she did have impairments that precluded some types of work, however, she could perform light work. Further, as noted by the ALJ, Guidry's own testimony regarding her daily activities supports the finding that she is not disabled from all work. Although it is clear that Guidry has pain and limitations posed by her impairments, that alone is insufficient for a disability finding – the impairments must preclude her from being able to perform work activities. Here, as found by the ALJ, the record supports a finding that Guidry can perform light work, and therefore, she is not disabled.

### *Conclusion*

For the reasons set forth above, the Commissioner's decision is AFFIRMED and Guidry's

12

appeal is DISMISSED.

Signed at Lafayette, Louisiana on ~~July~~ *August 31, 2005.* ~~, 2005.~~

_____

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, LA 70501
(337) 593-5140      FAX 593-5155

COPY SENT
DATE _8-31-05_
BY _CB_
TO _CG_